AIDAN BUTLER
3550 Wilshire Boulevard, Suite 1924
Los Angeles, California 90010
Telephone: (213) 388-5168
Telecopier: (213) 388-5178
tocontactaidan@gmail.com

Plaintiff *In Pro Se*



# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIDAN BUTLER, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> HUNTER WARFIELD, INC., a Florida corporation; and DOES 1-10, inclusive, <br><br> Defendants. | CASE NO.: <br><br> **CV 15-03337 PSG (JPRx)** <br><br> **COMPLAINT FOR VIOLATIONS OF:** <br><br> 1) THE FAIR DEBT COLLECTION PRACTICES ACT, <br><br> AND <br><br> 2) THE ROSENTHAL ACT. <br><br> **DEMAND FOR JURY TRIAL.** |

## I. JURISDICTION AND VENUE.

1. Jurisdiction of this Court arises under 15 U.S.C. §1692k(d) and 28 U.S.C. §1337, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367. Declaratory relief is available pursuant to 28 U.S.C. §2201 and 2202.

2. Venue in this District is proper in that Plaintiff's claim arose in this District.

///

///



1              COMPLAINT

## II. THE PARTIES.

3. The plaintiff, AIDAN BUTLER ("Plaintiff"), is a natural person. At all relevant times, he resided in Los Angeles, California.

4. Defendant HUNTER WARFIELD, INC. (hereinafter "HW"), is, and at all times relevant herein was, a Florida corporation with its principal place of business at 4620 Woodland Corporate Blvd., Tampa, Florida 33614.

5. The true names and capacities, whether individual, corporate, associate or otherwise, of the defendants sued herein as DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues such defendants by such fictitious names. Plaintiff will amend this complaint to show the true names and capacities of such defendants when they have been ascertained. Plaintiff is informed and believes that each of the defendants designated herein as a DOE was in some manner responsible for the occurrences and injuries alleged herein.

6. At all times mentioned herein, each of the defendants was the agent and employee of the other named defendants, and in doing the things alleged were acting within the course and scope of such agency and employment, and in doing the acts herein alleged were acting with the consent, permission and authorization of the remaining defendants. All actions of each of the defendants were ratified and approved by the other named defendants.

7. Defendants are debt collectors, as defined by the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6), and as defined by California Civil Code section 1788.2( c).

## III. FACTUAL ALLEGATIONS.

8. Plaintiff, who is not a minor, signed a residential lease for a tenth floor single bedroom apartment at Park La Brea on or around October 28, 2013. The monthly rent was approximately $2,000.00. Within the first week of Plaintiff's tenancy, at least one of the two elevators in the building broke down for several

consecutive days, and then repeatedly stopped working thereafter, throughout Plaintiff's entire tenancy. The problem became so notable that a local free paper called the Larchmont Chronicle published a front-page article about Park La Brea's recurrent elevator maintenance problems, within the first two months of Plaintiff's tenancy.

9. While stairs were available in the residential tower, the stairwells were routinely used as smoking lounges by smokers who lived at Park La Brea. To avoid excessive waits for the elevator, Plaintiff had to hike up ten flights of stairs – occasionally with groceries, books, etc. – through air densely filled with carcinogenic smoke. Plaintiff's repeated complaints to Park La Brea about the abuse of the "No Smoking" policy were largely ignored; Park La Brea security failed to enforce the policy. This lapse was noted by tenants other than Plaintiff; at least one tenant in the same tower repeatedly posted reproachful notes about the illicit smoking in the public spaces at Plaintiff's residential tower.

10. In early January, 2014, Plaintiff received notice from Park La Brea proclaiming that he was eligible for permanent relocation, along with payment commensurate to the length of his tenancy (specifically, $7,450.00), since Park La Brea planned certain long-term renovations to the premises. The packet included a form which Plaintiff was asked to complete and submit within fifteen days in order to accept the relocation terms. Obviously, Plaintiff timely completed and submitted his request for permanent relocation. However, with a few days, Plaintiff received a notice from Park La Brea indicating that it intended to "decline" Plaintiff's request for relocation.

11. On or around January 22, 2014, Plaintiff gave notice of his intent to vacate the apartment pursuant to Park La Brea's own relocation notice, and due to its intolerable maintenance problems, its failure to enforce its own smoking rules, and various other complaints. Consistent with that notice, Plaintiff vacated the premises at the end of January, 2014, simultaneously turning over his keys, security keycard,

etc. The premises – occupied for only three months – were left in perfect condition.

12. Several months later, Plaintiff received a letter from HW dated May 5, 2014, stating that Plaintiff owed a past due amount of $6,966.97 for the apartment. The letter also stated, "demand is hereby made for full payment," and "THIS IS AN ATTEMPT TO COLLECT A DEBT BY A DEBT COLLECTOR . . ." The letter included instructions on how to pay the debt, as well as a tear-off section with blank spaces for Plaintiff's credit card information.

13. On May 12, 2014, Plaintiff wrote back to HW, explaining that not only did he owe Park La Brea nothing, Park La Brea had failed to account for his security deposit, in violation of California Civil Code section 1950.5, and had further failed to comply with its own notice acknowledging Plaintiff's entitlement to a relocation fee.

14. Plaintiff's letter further stated, *inter alia*, "I demand that you immediately refrain from any further attempts to communicate with me regarding the debt."

15. Plaintiff mailed the cease communication letter by certified mail, return receipt requested.

16. HW received Plaintiff's cease communication letter shortly thereafter, on or around May 15, 2015. The Domestic Return Receipt was signed by hand by an employee of HW, who inscribed the name "K. Beck."

17. HW ignored Plaintiff's request to cease communication regarding the debt. Approximately ten months later, on April 3, 2015, HW sent Plaintiff another letter, stating in part, "Enclosed is verification of the debt ," though Plaintiff had not requested validation of the debt, but had, in fact, demanded that HW cease communicating with him about the debt.

18. Additionally, the April 3, 2015, letter, stated a "current balance" of $956.67 – approximately $6,000.00 less than the amount demanded by HW on May 5, 2014, even though Plaintiff had made no payments to either HW or Park La Brea

in the intervening months.[1]  HW's letter of April 3, 2015, letter included the statement, "This communication is from a debt collector and is an attempt to collect a debt. . . ."

19.  Both of HW's letters were attempts to collect sums of money that included fees, penalties and interest not authorized by any enforceable contract or statute.

## FIRST CLAIM FOR RELIEF

(For Violations of the FDCPA Against HW and DOES 1 through 5, inclusive)

20. Plaintiff repeats and reincorporates by reference the paragraphs 1 through 19 above.

21. Defendants, and each of them, violated the FDCPA.  Defendants' violations include, but are not limited to, the following:

a) Using false representations and deceptive means to collect or attempt to collect a debt, in violation of 15 U.S.C. §1692e(10);

b) Using unfair and/or unconscionable means to collect an alleged debt, in violation of 15 U.S.C. §1692f;

c) Contacting Plaintiff in an attempt to collect a debt after receiving a cease communication directive, in violation of 15 U.S.C. §1692c( c);

d) Attempting to collect an amount (including any interest, fee, charge, or expense incidental to the principal obligation) not expressly authorized by the agreement creating the purported debt or permitted by law, in violation of 15 U.S.C. §1692f(1).

---

[1]   Although the balance demanded in HW's April 3, 2015, letter was drastically lower than the amount which HW originally attempted to collect, it was still higher than the sum the creditor – Park La Brea – claimed was owed in a November 13, 2014 "final statement" which was emailed to Plaintiff.  That amount was only $585.86.

22. As a direct and proximate result of the above violations of the FDCPA, Plaintiff has suffered actual damages, including but not limited to feelings of anguish, frustration, humiliation, anxiety, and stress, among other things. For that reason, Defendants, and each of them, are liable to Plaintiff for declaratory judgment that defendants' conduct violated the FDCPA, and Plaintiff's actual damages, statutory damages, costs and attorney's fees, should Plaintiff retain counsel.

## SECOND CLAIM FOR RELIEF

(For Violations of the Rosenthal Act Against HW and DOES 1 through 5, inclusive)

23. Plaintiff repeats and reincorporates by reference the paragraphs 1 through 22 above.

24. Defendants, and each of them, knowingly and wilfully violated California's Rosenthal Fair Debt Collection Practices Act (hereinafter the "Rosenthal Act"). Defendants' violations include, but are not limited to, the following acts performed in attempting to collect a consumer debt:

a) Using false representations and deceptive means to collect or attempt to collect a debt, in violation of 15 U.S.C. §1692e(10) and California Civil Code section 1788.17;

b) Using unfair and/or unconscionable means to collect an alleged debt, in violation of 15 U.S.C. §1692f and California Civil Code section 1788.17;

c) Contacting Plaintiff in an attempt to collect a debt after receiving a cease communication directive, in violation of 15 U.S.C. §1692c( c) and California Civil Code section 1788.17; and

d) Attempting to collect an amount (including any interest, fee, charge, or expense incidental to the principal obligation) not expressly authorized by the agreement creating the purported debt or permitted by law, in violation of 15 U.S.C. §1992f(1) and California Civil Code section 1788.17.

25. As a result of defendants' violations of the Rosenthal Act, pursuant to

Civil Code section 1788.30, Plaintiff is entitled to actual damages, statutory damages, costs of suit and attorney's fees, should Plaintiff retain counsel.

WHEREFORE, Plaintiff requests that judgment be entered in his favor against the defendants as follows:

1. Statutory damages, pursuant to 15 U.S.C. section 1692k(a)(2) and/or Civil Code section 1788.30(b);

2. Actual damages, pursuant to 15 U.S.C. section 1692k(a)(1) and/or Civil Code section 1788.30(a);

3. Costs and (should Plaintiff retain counsel) reasonable attorney's fees, pursuant to 15 U.S.C. section 1692k(a)(3), and/or Civil Code section 1788.30(c) and/or Code of Civil Procedure section 490.020.

4. General damages, in an amount subject to proof at trial; and

5. Such other and further relief as the Court deems just and proper.

PLEASE TAKE NOTICE that Plaintiff AIDAN BUTLER requests a trial by jury.

DATED: May 1, 2015                               Respectfully submitted,

                                                 By: _____
                                                 Aidan Butler
                                                 Plaintiff *In Pro Se*